**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

REALTIME ADAPTIVE STREAMING, LLC,

        Plaintiff,

   v.

AMAZON.COM, INC.; AMAZON DIGITAL
SERVICES, LLC; AMAZON DIGITAL
SERVICES, INC.,

        Defendants.

Case No. 6:17-cv-00549-JRG

JURY TRIAL DEMANDED

**MOTION OF DEFENDANTS AMAZON.COM, INC., AMAZON
DIGITAL SERVICES, LLC, AND AMAZON DIGITAL SERVICES, INC.
<u>TO TRANSFER VENUE TO THE WESTERN DISTRICT OF WASHINGTON</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ..........................................................................................................1

STATEMENT OF FACTS ............................................................................................2

    I.    THIS ACTION..................................................................................................2

    II.    THE PARTIES...................................................................................................3

        A.    Realtime Is a Patent Assertion Entity with No Meaningful Connection to This District. ..........................................................................................3

        B.    The Amazon Defendants Are Located in Seattle and So Is Information About the Accused Technology.................................................................4

ARGUMENT ..................................................................................................................5

    I.    REALTIME COULD HAVE BROUGHT THIS CASE IN WASHINGTON. .......5

    II.    THIS CASE SHOULD BE LITIGATED IN THE WESTERN DISTRICT OF WASHINGTON BECAUSE IT IS A MORE CONVENIENT FORUM...............6

        A.    The Private Interest Factors Favor Transfer. ...............................................6

            1.    The Vast Majority of Relevant Documents and Information Are in the Western District of Washington............................................6

            2.    The Cost of Attendance and Inconvenience of Witnesses Strongly Favor Transfer Because the Majority of Witnesses Are Located Over Two Thousand Miles Away from This District. .......7

            3.    The Availability of Compulsory Process to Secure Witness Attendance Favors Transfer.........................................................10

            4.    No Practical Problems Favor Litigation in this District Compared to the Western District of Washington.........................11

        B.    The Public Interest Factors Also Favor Transfer......................................12

            1.    Transfer Would Create No Administrative Difficulties in the Western District of Washington....................................................12

            2.    The Western District of Washington Has a Far Greater Interest in Adjudicating This Case Than the Eastern District of Texas......12

            3.    The Remaining Factors Are Neutral. ............................................14

i

CONCLUSION.........................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affinity Labs of Tex. v. Samsung Elecs. Co.*,
  968 F. Supp. 2d 852 (E.D. Tex. 2013) .................................................................................13

*GroupChatter, LLC v. Itron, Inc.*,
  No. 6:15-cv-900 JRG-JDL, 2016 WL 2758480 (E.D. Tex. May 12, 2016) ...........................10

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009) ................................................................................6, 7, 10

*In re Hoffmann-La Roche*,
  587 F.3d 1333 (Fed. Cir. 2009) .............................................................................................13

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) .................................................................................................11

*In re Morgan Stanley*,
  417 F. App'x 947 (Fed. Cir. 2011) .............................................................................3, 11, 12

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ...................................................................................5, 6, 13

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014) .............................................................................................10

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ........................................................................................9, 10

*In re Verizon Bus. Network Servs., Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) ...............................................................................................11

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ..........................................................................................5, 6, 7

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................5, 6, 10, 12, 13

*Internet Machs. LLC v. Alienware Corp.*,
  No. 10-cv-023, 2011 U.S. Dist. LEXIS 66207 (E.D. Tex. June 7, 2011) ...............................12

*Minka Lighting, Inc. v. Trans Flobe Imps., Inc.*,
  No. 3:02-cv-02538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) ......................................11

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Network Prot. Scis., LLC v. Juniper Networks, Inc.*,
  No. 10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .........................................13

*Orinda Intellectual Props. USA Holding Grp., Inc. v. Sony Corp.*,
  No. 2:08-cv-323-CE, 2009 WL 3261932 (E.D. Tex. Sept. 29, 2009) ....................................14

*Realtime Data, LLC d/b/a IXO v. Apple Inc.*,
  No. 15-cv-00885-RWS-JDL, Dkt. Nos. 28, 31 (E.D. Tex. Apr. 18, 2016) ..........................1, 5

*Realtime Data LLC d/b/a IXO v. Barracuda Networks, Inc.*,
  No. 17-cv-120, Dkt. No. 69 (E.D. Tex. Oct. 24, 2017) .......................................................1, 5

*Realtime Data LLC d/b/a IXO v. Dropbox, Inc.*,
  No. 15-cv-00465-RWS-JDL, 2016 WL 153860 (E.D. Tex. Jan 12, 2016) ...............1, 5, 7, 11

*Realtime Data, LLC d/b/a IXO v. Morgan Stanley*,
  No. 09-cv-00326-LED-JDL, Dkt. No. 360 (E.D. Tex. Sept. 21, 2011)..................................1, 5

*Realtime Data LLC d/b/a IXO LLC v. Sling TV LLC*,
  No. 1:17-cv-02097, Dkt. No. 2 (D. Colo. Aug. 31, 2017) ........................................................1

*Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*,
  No. 15-cv-00470-RSW-JDL, Dkt. No. 43, (E.D. Tex. March 29, 2016) .................................1

*Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*,
  No. 15-cv-470, 2016 WL 235183 (E.D. Tex. Jan. 20, 2016) ....................................1, 5, 7, 11

*Realtime Data LLC v. Fujitsu America, Inc.*,
  No. 16-cv-1035, Dkt. No. 42 (E.D. Tex. Feb. 28, 2017) ......................................................1, 5

*Realtime Data LLC v. Netgear Inc.*,
  No. 17-cv-125, Dkt. No. 37 (E.D. Tex. Oct. 11, 2017) .........................................................1, 5

**STATUTES**

28 U.S.C. § 1400(b) ...................................................................................................................6

28 U.S.C. § 1404(a) .......................................................................................................5, 7, 11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45 ....................................................................................................................10

Pursuant to 28 U.S.C. § 1404(a), the Amazon defendants[1] respectfully move to transfer this case to the United States District Court for the Western District of Washington.

## INTRODUCTION

This patent infringement suit belongs in the Western District of Washington.  Plaintiff Realtime,[2] a New York-based patent assertion entity, asserts claims against three Amazon entities, each of which is based in Seattle, Washington.  Neither Realtime nor its claims have a bona fide connection to this district.  Its only connections to this district are the numerous lawsuits it has filed here.  Indeed, this case is just the latest of many that Realtime entities have filed in this district—seven of which the Court transferred to more convenient venues.[3]

Amazon has no meaningful presence here either.  It is headquartered in Seattle and the technology accused in this case is designed and developed there.  Its employees knowledgeable

---

[1] Realtime names as defendants Amazon.com, Inc., Amazon Digital Services, LLC, and Amazon Digital Services, Inc.  Amazon Digital Services, LLC is a wholly owned subsidiary of Amazon.com, Inc.  Amazon Digital Services, Inc. no longer exists, and was converted to a limited liability company in December 2015.

[2] Plaintiff Realtime Adaptive Streaming, LLC appears to be related, if not interchangeable with, another entity, Realtime Data, LLC, that has regularly filed suit in this district.  Indeed, both entities share the same three officers, Gerald Padian, Richard G. Tashjian, and Stephen McErlain, and a common mailing address in Bronxville, New York.  (Declaration of Saina Shamilov in Support of Motion to Transfer ("Shamilov Decl.") Exs. A-B.  Moreover, in a related case in the District of Colorado, Realtime Data, LLC sued Sling TV LLC, among other defendants, alleging infringement of one of the patents asserted in this case.  *See, e.g., Realtime Data LLC d/b/a IXO LLC v. Sling TV LLC*, No. 1:17-cv-02097, Dkt. No. 2 (D. Colo. Aug. 31, 2017).

[3] *See Realtime Data, LLC d/b/a IXO v. Apple Inc.*, No. 15-cv-885, Dkt. No. 31 (E.D. Tex. Apr. 18, 2016); *Realtime Data LLC d/b/a IXO v. Dropbox, Inc.*, No. 15-cv-465, 2016 WL 153860, at *6 (E.D. Tex. Jan 12, 2016); *Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*, No. 15-cv-470, 2016 WL 235183, at *13 (E.D. Tex. Jan. 20, 2016) (holding adopted and *objections overruled at Realtime Data LLC d/b/a IXO v. Teradata Ops., Inc.*, No. 15-cv-470, Dkt. No. 43 (E.D. Tex. Mar. 29, 2016)); *Realtime Data, LLC d/b/a IXO v. Morgan Stanley*, No. 09-cv-326, Dkt. No. 360 (E.D. Tex. Sept. 21, 2011); *Realtime Data LLC v. Netgear Inc.*, No. 17-cv-125, Dkt. No. 37 (E.D. Tex. Oct. 11, 2017); *Realtime Data LLC v. Fujitsu America, Inc.*, No. 16-cv-1035, Dkt. No. 42 (E.D. Tex. Feb. 28, 2017); *Realtime Data LLC d/b/a IXO v. Barracuda Networks, Inc.*, No. 17-cv-120, Dkt. No. 69 (E.D. Tex. Oct. 24, 2017).

about that technology are in Seattle.  Its relevant documents and information are located in Seattle.

Even non-party witnesses are in Seattle.  In the interests of justice and convenience, this Court

should transfer the case to the Western District of Washington.

## STATEMENT OF FACTS

### I.    THIS ACTION

This action is in its infancy.  On September 27, 2017, as part of a broad campaign of patent

infringement lawsuits, Realtime filed a complaint against Amazon, alleging infringement of U.S.

Patent Nos. 8,934,535 ("'535 patent"), 9,769,477, ("'477 patent") and 8,929,442 ("'442 patent").

(Dkt. No. 1.)   On December 1, 2017, Realtime amended its complaint, adding infringement

allegations of two additional U.S. patents, No. 8,634,462 ("'462 patent") and No. 9,578,298 ("'298

patent").  (Dkt. No. 21 ("FAC").)  The originally-asserted patents are generally directed to systems

and methods for optimizing the choice of a data compression algorithm based on factors such as

bandwidth, processing power, and storage.  (*See, e.g.*, Dkt. No. 21-1 ('535 patent at Abstract).)

The two newly-asserted patents are generally directed to methods and systems for encoding a video

signal using hybrid coding (the '462 patent) and decoding video data streams presenting three-

dimensional images (the '298 patent).  (*See, e.g.*, Dkt. No. 21-4 ('462 patent at Abstract), Dkt. No.

21-5 ('298 patent at Abstract).)

Realtime accuses Amazon's video streaming technology of infringing the patents because

that technology purportedly uses two industry standards:  the H.264 industry standard entitled

Advanced Video Coding for Generic Audiovisual Services, and the H.265 standard entitled High

Efficiency Video Coding (HEVC).  (*See, e.g.*, FAC ¶¶ 13-16 and ¶¶ 67-72.)  Realtime accuses

Amazon's video streaming service (called Amazon Video) of infringing the '535 and '477 patents.

(*Id.* ¶¶ 11, 28.)  And although Realtime accuses Amazon Fire tablets and Fire TV devices of

infringing claim 8 of the '442 patent, claim 1 of the '462 patent, and claim 1 of the '298 patent, its

allegations are based on these devices' ability to deploy Amazon Video.  (*Id.* ¶¶ 47, 66, 94.)

Indeed, Realtime's infringement allegations for Fire tablets and Fire TV are similar or, in some

cases, nearly identical, to the allegations for the other patents.  (*See, e.g.*, *id.* ¶¶ 45-52.)  Thus, in

this case, Realtime's infringement claims will rise and fall with its allegations against the Amazon

Video service.

## II.   THE PARTIES

### A.   Realtime Is a Patent Assertion Entity with No Meaningful Connection to This District.

Realtime has no business other than asserting patents; it does not make or sell any products

or make any beneficial use of the technology it claims to own.  *See In re Morgan Stanley*, 417 F.

App'x 947, 948 (Fed. Cir. 2011) (noting Realtime Data, LLC was "a non-practicing entity

headquartered in New York").  Realtime was incorporated in Texas just last year, in May 2016,

and purports to have an office in Tyler.  (*See* Shamilov Decl., Ex. B; FAC ¶ 1.)  Despite purportedly

maintaining an office in Tyler, Realtime lists a Dallas office address with the Texas State

Comptroller and has a mailing address in Bronxville, New York.  (Shamilov Decl., Ex. B.)  Indeed,

Realtime's officers reside in New York, as do the inventors of the '535, '477, and the '442 patents.

(*Id.*, Exs. A, C-D.)  The inventors of the '462 and '298 patents are based in Europe.  (*See, e.g.*,

'462 patent at cover (listing inventors Matthias Narroschke and Hans-Georg Musmann of

Germany); '298 patent at cover (listing inventors Giovanni Ballocca and Paolo D'Amato of Italy).)

Realtime's only connection to this district is the nearly fifty cases that it and its affiliate have filed

here, asserting claims for patent infringement against a disparate group of defendants, including

computer hardware manufacturers such as Dell and Cisco, data hosting and storage companies

such as Rackspace and Carbonite, and satellite television companies such as DISH Network and

EchoStar.  However, even its patent assertion is not limited to this district—Realtime has at least

ten pending cases involving one or more of the patents asserted here, including in this district, the Central District of California, the District of Colorado, and the District of Delaware.  (Shamilov Decl., Ex. E.)

### B.    The Amazon Defendants Are Located in Seattle and So Is Information About the Accused Technology.

The Amazon defendants are Delaware companies with headquarters in Seattle. (Declaration of Andrew Watts in Support of Amazon's Motion to Transfer Venue ("Watts Decl.") ¶ 2.)  Because the accused Amazon Video service was also designed and developed there, nearly all relevant witnesses and evidence are located in Seattle:

- The employees most knowledgeable about Amazon Video;

- The technical documents and source code Amazon Video engineers create and maintain;

- The team responsible for Amazon's source code repository systems, including the systems that host source code for Amazon Video; and

- The finance team responsible for Amazon Video, as well as Fire tablets and Fire TV.

(*Id.* ¶¶ 2-8.)[4]

No employees with technical or financial knowledge about the accused technology work in the Eastern District of Texas.  (*Compare* FAC ¶ 5 *with* Watts Decl. ¶¶ 4-6.)  And Amazon does not maintain in this district any source code, technical, or financial information relating to this technology.  (Watts Decl. ¶¶ 4-6.)

---

[4] Fire tablets and Fire TV devices are designed and developed at Amazon's offices in Sunnyvale and Cupertino, California, with support from teams in Seattle and overseas vendors. (*Id.* ¶ 7.)  Since these devices are accused because they can deploy Amazon Video, evidence regarding the design and development of their other features will be of marginal relevance. Nevertheless, the Western District of Washington would still be a substantially closer and more convenient venue for Amazon employees in the San Francisco Bay Area than the Eastern District of Texas.

**ARGUMENT**

Under 28 U.S.C. § 1404(a), a court may transfer a civil action to any judicial district where it could have been brought originally for the "convenience of parties and witnesses" and "in the interest of justice." Courts should transfer cases where the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). "[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer for the convenience of the parties." *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

Courts in this district have transferred seven of Realtime's cases to other district courts under Section 1404.[5] In each case, the courts that ordered transfer found that the location of documents and witnesses in the transferee venue outweighed Realtime's limited connections to this district.[6] For the same reasons, the Court should transfer this case to the Western District of Washington.

**I.    REALTIME COULD HAVE BROUGHT THIS CASE IN WASHINGTON.**

Realtime could have brought its claims against Amazon in the Western District of Washington because the accused Amazon products and services were designed and developed there, and Amazon has its headquarters in that district. (Watts Decl. ¶¶ 2-3.) The Court can therefore order transfer of this case to the Western District of Washington. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (describing threshold requirement for change

---

[5] *Apple Inc.*, No. 15-cv-885, Dkt. Nos. 28, 31; *Dropbox, Inc.*, 2016 WL 153860, at *6; *Teradata Ops., Inc.*, 2016 WL 235183, at *6; *Netgear Inc.*, No. 17-cv-00125-RWS, Dkt. No. 37 at 9-10; *Fujitsu America, Inc.*, No. 16-cv-1035, Dkt. No. 42 at 19; and *Barracuda Networks, Inc.*, No. 17-cv-120, Dkt. No. 69 at 9-10; *Morgan Stanley*, No. 09-cv-326, Dkt. No. 360.

[6] *See, e.g., Dropbox, Inc.*, 2016 WL 153860, at *2-3, *6 (finding that Dropbox made "strong showing in favor of transfer" and giving little weight to location of Realtime's witnesses and evidence related to patent assertion).

of venue); *see also Volkswagen II*, 545 F.3d at 313; 28 U.S.C. § 1400(b) (holding that a patent infringement action may be brought in the district "where the defendant has committed acts of infringement and has a regular and established place of business").  As discussed below, the relevant convenience factors compel transfer in this case.

## II.   THIS CASE SHOULD BE LITIGATED IN THE WESTERN DISTRICT OF WASHINGTON BECAUSE IT IS A MORE CONVENIENT FORUM.

The Court must next consider the convenience of the parties and witnesses, as well as the interests of justice, by balancing relevant private and public interest factors.  *See Volkswagen II*, 545 F.3d at 315.  Here, both favor transfer of this case to the Western District of Washington.

### A.   The Private Interest Factors Favor Transfer.

The relevant private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id*. (citing *Volkswagen I*, 371 F.3d at 203).  Each factor supports transfer to the Western District of Washington.

#### 1.   The Vast Majority of Relevant Documents and Information Are in the Western District of Washington.

The relative ease of access to documentary evidence strongly favors transfer to the Western District of Washington.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Nintendo*, 589 F.3d at 1199 (citing *In re Genentech*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Amazon maintains documents and information related to Amazon Video in Seattle.  (Watts Decl. ¶¶ 4-6.)  The bulk of Amazon Video technical documentation and computer source code— *i.e.,* the most important discovery related to liability in a patent infringement case—is maintained

by teams in Amazon's Seattle offices.  (*Id.* ¶ 4)  Amazon maintains its financial information relating to Amazon Video in Seattle.  (*Id.* ¶ 6.)  Amazon also maintains financial information related to the Fire tablet and Fire TV devices in Seattle.  (*Id.*)  In contrast, Amazon stores no relevant documents or source code in this district.  (*Id.* ¶¶ 4-7.)  Thus, nearly all of the evidence and information necessary to resolve this case is stored in the Western District of Washington, and not in this district.  *See Teradata Ops., Inc.*, 2016 WL 235183, at *2-3 (noting "bulk of the relevant evidence" comes from the accused infringer, and giving little weight to "patent file histories, licenses, and other documents relating to the patents-in-suit" Realtime maintained in its Tyler office) (citing *Genentech*, 566 F.3d at 1345); *Dropbox*, 2016 WL 153860, at *3 (same).  This factor heavily favors transfer.

**2.      The Cost of Attendance and Inconvenience of Witnesses Strongly Favor Transfer Because the Majority of Witnesses Are Located Over Two Thousand Miles Away from This District.**

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen I*, 371 F.3d at 204-05.  Given this Court's distance from Amazon headquarters in Seattle, litigating here would impose an undue burden on the Amazon employees and other witnesses with knowledge relevant to this case.  (*See* Watts Decl. ¶¶ 2-7.)

As an initial matter, Realtime has no relevant witnesses in this district.  Its officers live in New York, not Texas.  *Teradata Ops., Inc.*, 2016 WL 235183, at *4; *Dropbox*, 2016 WL 153860, at *2, 4.  None of the inventors of the asserted patents is based in the State of Texas or this district. Indeed, the named inventors of the three originally-asserted patents, Stephen McErlain and James J. Fallon, are long-time New York residents, while the inventors of the two newly-asserted patents are based in Europe.  (Shamilov Decl., Exs. C-D; '462 patent at cover;'298 patent at cover.)

7

Realtime's choice to file in this district aside, travel to Seattle for Realtime's witnesses would in fact be *more* convenient than travel to Tyler.  The availability of direct flights generally makes flying from New York to Seattle less expensive *and* faster than flying to Tyler.  (*Compare id.*, Exs. F and G.)  Moreover, given its decision to file lawsuits in California, Colorado, and Delaware (*see id.*, Ex. E), Realtime's witnesses will have to travel cross-country regardless of where this case is tried.  Travel to Seattle would be no less convenient than travel to those disparate jurisdictions.

Like Realtime, Amazon has no relevant employees in this district.  Indeed, the Amazon employees most knowledgeable about the accused technology work out of Amazon's Seattle offices.  (Watts Decl. ¶¶ 2-7.)  These employees include:  Nick Benson, Global Head of Video Delivery, Bruce Li, Senior Manager of Software Development, and Andrew Watts, Director of Amazon Video.  (*Id.* ¶¶ 2, 4)  Other teams and employees with relevant knowledge about Amazon Video work in Seattle, including those responsible for Amazon Video technical documents and source code, and financial information for Amazon Video, Amazon Fire tablets and Fire TV.  (*Id.* ¶¶ 2-7.)

The Western District of Washington would also be more convenient for relevant non-parties.  First, at least two former Amazon employees involved in the design and development of the Amazon Video service are based in the Seattle area.  Some of these former employees have knowledge that current Amazon employees may not possess.  (*Id.* ¶ 8.)

Second, at least one additional non-party witness resides in the Western District of Washington.  Dr. Gary J. Sullivan led the working group responsible for writing the H.264 and H.265 industry standards—the very standards Realtime alleges are the bases of its infringement claims in this case.  (*See* Shamilov Decl., Ex. H)  Dr. Sullivan lives and works in the Seattle area.  (*Id.*, Ex. I)  Because Realtime alleges in its complaint that Amazon infringes the patents by

encoding streaming video according to the H.264 and H.265 standards, Dr. Sullivan may be a highly relevant witness in this case.

Third, a number of non-party witnesses knowledgeable about prior art live substantially closer to the Western District of Washington than to the Eastern District of Texas.  The inventors of U.S. Patent No. 5,216,503, titled "Statistical Multiplexer for a Multichannel Image Compression System," both live on the West Coast.  (Shamilov Decl. Exs. J-L.)  Dr. Ke-Chiang Chu, a named inventor on U.S. Patent Nos. 5,467,087 titled "High Speed Lossless Data Compression System" and 5,150,430 titled "Lossless Data Compression Circuit and Method," lives in the San Francisco Bay Area.  (Shamilov Decl., Exs. M-P.)  Dr. Randy Katz, who developed the Bay Area Research Network System, which used data compression techniques related to the subject matter of the asserted patents, teaches at UC Berkeley and lives in San Francisco.  (*Id.*, Exs. Q-S.)  Finally, Joy Aloysius Thomas, inventor of U.S. Patent No. 5,870,036 titled "Adaptive multiple dictionary data compression" resides in the San Francisco Bay Area.  (*Id.*, Exs. T-U.)

For these party and non-party witnesses, travel to Tyler would be inconvenient:  they would incur significant travel costs in connection with approximately 1,800- to 2,200-mile trips on multiple connecting flights.  These witnesses would not be able to complete their travel within a single day, which would mean a minimum of three days away from family and work.  As the Federal Circuit has recognized, "additional distance from home means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  Litigating this case in the Western District of Washington would avoid this considerable expense and

inconvenience.[7]  This factor heavily favors transfer.  *In re TS Tech,* 551 F.3d at 1320.

### 3. The Availability of Compulsory Process to Secure Witness Attendance Favors Transfer.

Federal Rule of Civil Procedure 45(c)(1)(A) limits a court's subpoena power over potential witnesses, barring a court from commanding non-party witnesses to travel more than 100 miles from their homes or businesses to provide testimony.  Given this strict limitation, the lack of availability of compulsory process to secure the attendance of non-party witnesses in this district—as compared to in the Western District of Washington—favors transfer.  *See, e.g.*, *Genentech*, 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

Non-party witnesses Dr. Gary Sullivan, Bill Carr, and Brad Baron reside in the Western District of Washington and could be compelled to testify at trial there, but would be outside of the subpoena power of this Court.  Fed. R. Civ. P. 45(c)(1)(B)(ii); *see also See In re Toyota Motor Corp.,* 747 F.3d 1338, 1340-41 (Fed. Cir. 2014) (issuing writ of mandamus directing transfer to district where witnesses subject to subpoena); *Volkswagen II,* 545 F.3d at 316 (holding a court should transfer to a venue with absolute subpoena power); (Shamilov Decl., Ex. I; Watts Decl. ¶ 8).  In contrast, Amazon knows of no relevant non-party witnesses that live in Texas, let alone in this judicial district.  *See GroupChatter, LLC v. Itron, Inc.*, No. 6:15-cv-900 JRG-JDL, 2016 WL 2758480, at *3 (E.D. Tex. May 12, 2016) ("The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum.").  Given the number of non-party witnesses in the Western District of

---

[7] Should the inventors of the '462 and '298 patents—based in Germany and Italy, respectively—testify at trial in this matter, travel to Seattle would be less or comparably expensive and require significantly less time than travel to Tyler.  (*Compare id.*, Exs. V and W *with* X and Y, respectively.)

Washington with knowledge potentially relevant to the claims and defenses in this case, this factor also favors transfer.

### 4.   No Practical Problems Favor Litigation in this District Compared to the Western District of Washington.

Transfer would pose no practical problems for any party.  Realtime's New York-based witnesses must travel regardless of whether this case moves forward in Texas or Washington.  *See Teradata Ops., Inc.*, 2016 WL 235183, at *3-4; *Dropbox*, 2016 WL 153860, at *2, 4.  And as explained above, traveling to Washington would in fact be more practical and convenient for them than traveling to Texas.  Indeed, because this Court should not give weight to Realtime's choice of forum, the inconvenience that Amazon and the non-party witnesses would face litigating in this district far outweighs Realtime's decision to file here.  *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003); *see also Minka Lighting, Inc. v. Trans Flobe Imps., Inc.*, No. 3:02-cv-02538, 2003 WL 21251684, at *1, 4 (N.D. Tex. May 23, 2003) ("[T]he plaintiff's choice of forum has reduced significance where most of the operative facts occurred outside the district.").

Moreover, no issues of judicial economy or efficiency warrant keeping the case in this district, and any past experience this Court has had with the Realtime patents does not weigh against transfer.  In another case involving a Realtime entity, the Federal Circuit held that "the proper administration of justice may be to transfer to the far more convenient venue *even when the trial court has some familiarity with a matter from prior litigation*."  *Morgan Stanley*, 417 F. App'x at 949 (emphasis added).  "To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)."  *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011).  Moreover, since Realtime has chosen to pursue cases in three other judicial districts across the country (Shamilov Decl., Ex. E), multiple courts will have to resolve overlapping patent issues

11

even if this case remains in this district.  Judicial efficiency does not weigh against transfer.

Finally, the procedural posture of this case heavily favors transfer.  This case remains in its earliest stages:  Amazon is filing its answer to the amended complaint concurrently with its filing of this motion, the Court has not set a schedule, and the parties have served no discovery.  *See Internet Machs. LLC v. Alienware Corp.*, No. 10-cv-023, 2011 U.S. Dist. LEXIS 66207, at *26-28 (E.D. Tex. June 7, 2011) (holding that transfer is more convenient when request precedes initial disclosures or entry of scheduling order).  The private interest factors strongly favor transfer.

## B.    The Public Interest Factors Also Favor Transfer.

The relevant public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws."  *Volkswagen II*, 545 F.3d at 315.  The first two factors favor transferring this case; the last two are neutral.

### 1.    Transfer Would Create No Administrative Difficulties in the Western District of Washington.

No serious concerns regarding court congestion in the Western District of Washington weigh against transfer.  In fact, for the year ended June 30, 2017, the median time-to-trial in the Western District of Washington was 19 months, compared to 22 months in this district.[8]  (Shamilov Decl., Ex. Z.)  This factor therefore favors transfer.

### 2.    The Western District of Washington Has a Far Greater Interest in Adjudicating This Case Than the Eastern District of Texas.

In evaluating which district has the greater connection to the litigation, courts should

---

[8] In any event, speed to trial is less important where, as here, the plaintiff is a patent assertion entity that "does not make or sell any product that practices the claimed invention."  *Morgan Stanley*, 417 Fed. Appx. at 950; *see also id.* (noting that Realtime is "not in need of a quick resolution of this case because its position in the market is threatened").

disregard interests that "could apply virtually to any judicial district or division in the United States," and should instead focus on particularized local interests. *Volkswagen II*, 545 F.3d at 317-18; *see also Nintendo*, 589 F.3d at 1198.

Here, the Western District of Washington has a unique and strong interest in adjudicating this dispute. Amazon maintains its corporate headquarters in Seattle, and employs over 30,000 people there, including those who design and develop the Amazon Video service. (Watts Decl. ¶ 2.) Realtime's claims question the work and reputation of the individual and corporate citizens in the district. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding transferee district's local interest was strong where the case concerned "the work and reputation" of the accused product's developers); *Network Prot. Scis., LLC v. Juniper Networks, Inc.*, No. 10-cv-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (holding local interest factor favored transfer from Texas to California, where the defendants were headquartered, developed the accused products, and employed thousands of people); *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (holding transferee district court had "an interest in protecting intellectual property rights that stem[med] from research and development" there).

The Eastern District of Texas, by contrast, does not have a compelling interest in this case. Amazon does not develop or design the accused technology in this district. (Watts Decl. ¶¶ 3, 7.) Amazon does not maintain relevant documents or other information here. (*Id.* ¶¶ 4-6.) And no Amazon employees with relevant knowledge reside or work in the district. (*Id.* ¶ 3-7, 9-11.) Moreover, as the Realtime entity in this case established operations in Texas just last year, its physical presence in the district—solely for the purpose of litigating its patents—does not give this district a particular interest in adjudicating Realtime's claims. *See Network Prot. Scis.*, 2012 WL 194382, at *7 (holding transfer from Texas appropriate where plaintiff had "small and fairly recent

13

operations" there).  Thus, the second public factor strongly favors transfer.

### 3.       The Remaining Factors Are Neutral.

Courts in this district and the Western District of Washington are both familiar with federal law governing patent cases and capable of adjudicating the patent issues here.  Moreover, this case implicates no conflicts of law.  The final two public interest factors are therefore neutral.  *See Orinda Intellectual Props. USA Holding Grp., Inc. v. Sony Corp.*, No. 2:08-cv-323, 2009 WL 3261932, at \*4 (E.D. Tex. Sept. 29, 2009).  In any event, neither factor outweighs the private interest factors and first two public interest factors, which all favor transfer.

## <u>CONCLUSION</u>

Courts in this district have transferred seven actions brought by Realtime entities to more convenient venues.  This Court should do the same.  Neither the parties nor the claims have any meaningful connection to the State of Texas or this district, and allowing this case to proceed here would unnecessarily inconvenience witnesses who live and work over 1,800 miles away and render potentially key fact witnesses unavailable for trial.  The interest of justice compels transfer to the Western District of Washington.

/ / /

Respectfully, submitted,

*/s/ Saina S. Shamilov*
_____
J. David Hadden
CA Bar No. 176148 (Admitted E.D. Tex.)
dhadden@fenwick.com
Saina S. Shamilov
CA Bar No. 215636 (Admitted E.D. Tex.)
sshamilov@fenwick.com
Todd R. Gregorian
CA Bar No. 236096 (Admitted E.D. Tex.)
tgregorian@fenwick.com
Ravi R. Ranganath
CA Bar No. 272981 (Admitted E.D. Tex.)
rranganath@gmail.com
Ciara N. Mittan
CA Bar No. 293308 (Admitted E.D. Tex.)
cmittan@fenwick.com

*Of Counsel:*

Melissa R. Smith
GILLAM & SMITH LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

FENWICK & WEST LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200
Counsel for Defendants

AMAZON.COM, INC., AMAZON DIGITAL
SERVICES, LLC, AMAZON DIGITAL
SERVICES, INC.

December 15, 2017

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 15, 2017.

*/s/ Saina S. Shamilov*
_____
Saina S. Shamilov

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with L.R. 7(h) regarding this motion. The parties conferred via telephone on December 15, during which counsel for Amazon explained its position and the basis for its requested transfer.  Following this call, counsel for Plaintiff confirmed via email that it opposes the relief requested by this motion.

*/s/ Saina S. Shamilov*
Saina S. Shamilov