# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING, LLC, <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC.; AMAZON DIGITAL SERVICES, LLC; and AMAZON DIGITAL SERVICES, INC., <br><br> Defendant. | Case No. 6:17-cv-549-JRG |

**REALTIME'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................. 1

II.     AMAZON HAS NOT MET ITS SIGNIFICANT BURDEN TO SHOW THAT THE WESTERN DISTRICT OF WASHINGTON IS "CLEARLY MORE CONVENIENT" ..... 2

A.   All Private Interest Factors Weigh Against Transfer or Are Neutral ............................ 2

   1.   The sources of proof are just as accessible in this District as the Western District of Washington ................................................................................................................ 2

   2.   The Western District of Washington is not more convenient for most of the potential witnesses .................................................................................................................... 4

   3.   The Western District of Washington does not possess more relevant subpoena power ..... 7

   4.   The "practical problems" and judicial economy weigh against transfer ........................... 8

B.   The Public Interest Factors Weigh Against Transfer ........................................................ 9

   1.   Administrative difficulties resulting from court congestion is neutral ............................. 9

   2.   The Western District of Washington does not have a greater interest ............................ 10

   3.   The other public interest factors are neutral .................................................................... 12

III.    CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Adaptix, Inc. v. Cellco Partnership d/b/a Verizon Wireless*,
    No. 6:15-cv-45-RWS-JDL, Dkt. No. 32 (E.D. Tex. Aug. 12, 2015) ......................................... 6

*Adrain v. Genetec Inc.*,
    No. 2:08-cv-423, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) ............................................. 8

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*,
    228 F.3d 544 (5th Cir. 2000) .................................................................................................. 8

*Cradle IP, LLC v. Texas Instruments, Inc.*,
    923 F. Supp. 2d 696 (D. Del. 2013) ...................................................................................... 11

*Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*,
    No. 6:11-CV-34-LED-JDL, 2012 WL 13009008 (E.D. Tex. Apr. 19, 2012) ......................... 11

*Elbit Sys. Land & C4i Ltd. v. Hughes Network Sys., LLC*,
    No. 2:15-CV-00037-RWS, 2017 WL 4693513 (E.D. Tex. July 19, 2017) ............................. 10

*In re Google Inc.*,
    412 Fed. Appx. 295 (Fed. Cir. 2011) ................................................................................. 8, 9

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ........................................................................................... 6, 8

*In re Volkswagen of America, Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................................................................. 2

*Ingeniador, LLC v. Adobe Sys. Inc.*,
    No. 2:12-CV-00805-JRG, 2014 WL 105106 (E.D. Tex. Jan. 10, 2014) ................................ 10

*Internet Machs. LLC v. Alienware Corp.*,
    No. 6:10-cv-023, 2011 U.S. Dist. LEXIS 66207 (E.D. Tex. June 7, 2011) ............................. 9

*iPowerUp, Inc. v. Ascent Solar Techs., Inc.*,
    No. LA CV16-01006 JAK (AFMx), 2016 WL 6953453 (C.D. Cal. May 27, 2016) ................ 3

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*,
    No. 6:8-CV-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) ................................................ 3

*Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*,
    No. 2:10-CV-216-JRG, 2012 WL 462956 (E.D. Tex. Feb. 13, 2012) .................................... 12

*Lax v. Toyota Motor Corp.*,
    65 F. Supp. 3d 772 (N.D. Cal. 2014) ...................................................................................... 3

*Mirror Worlds Techs., LLC v. Facebook, Inc.*,
    No. 17-CV-3473 (JGK), 2017 WL 5634127 (S.D.N.Y. Nov. 20, 2017) ................................... 4

*Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*,
    No. 2:08-cv-478-TJW, 2009 WL 3460276 (E.D. Tex. Oct. 23, 2009) ...................................... 8

*Nexus Display Techs. LLC v. Dell, Inc.*,
    No. 2:14-CV-762, 2015 WL 5043069 (E.D. Tex. Aug. 25, 2015) ............................................ 8

*NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*,
    No. 6:10-CV-229 JDL, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) .............................. 4, 5, 12

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
    No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ......................................... 6, 8

*Phoenix Licensing, L.L.C. v. Royal Caribbean Cruises Ltd.*,
    No. 2:13-CV-1095-JRG-RSP, 2014 WL 7272640 (E.D. Tex. Dec. 22, 2014) ......................... 10

*Realtime Data LLC v. Teradata Operations, Inc.*,
    No. 6:15-cv-470-RWS-JDL, 2016 WL 235183 (E.D. Tex. Jan. 20, 2016) ............................ 5, 7

*Realtime Data, LLC v. Rackspace US, Inc.*,
    No. 6:16-CV-00961, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) ........................................ 6, 9

*Texas Data Co., LLC v. Target Brands, Inc.*,
    771 F. Supp. 2d 630 (E.D. Tex. 2011) ....................................................................................... 2

*Tomita Techs. USA, LLC v. Nintendo Co.*,
    818 F. Supp. 2d 770 (S.D.N.Y. 2011) ......................................................................................... 4

**Statutes**

28 U.S.C. §1404 ............................................................................................................................ 2, 5

**Rules**

Fed. R. Civ. P. 42 ............................................................................................................................. 8

**I.      INTRODUCTION**

Amazon has not met its significant burden to show that the Western District of Washington is clearly more convenient than this District. All of the relevant transfer factors either weigh against transfer or are neutral at best. For example, Amazon admits that some of its relevant documents are in London and California, and thus will have to be transported regardless of whether this case is transferred. Further, all of Realtime's documents are stored in this District. With respect to witnesses, Amazon identifies multiple employees with duplicative knowledge and fails to explain why all are necessary for trial. Indeed, four of Amazon's six identified employee witnesses are all alleged to have knowledge regarding the same topic. Nor has Amazon established that its identified third-party witnesses—the majority of whom are prior art inventors who reside in California, *not* Washington—are necessary for trial. On the other hand, this District is far more convenient for each of Realtime's witnesses who live in New York, which is much closer to Texas than Washington. Not only is this District closer, but it is also home to one of Realtime's places of business (in Tyler). On the other hand, Realtime has no connection to Washington.

Judicial economy concerns also weigh heavily against transfer. There is one other case pending before this Court involving the same and/or related patents, and which involves substantial overlap in issues of fact and law. In contrast, there are no related cases in Washington. And contrary to Amazon's assertions, this District has just as much of an interest in this case as the Western District of Washington. It is undisputed that Amazon has facilities and employees in or near this District and throughout Texas, and that Amazon sells products, including the accused products, in this District and throughout Texas. Because Amazon derives significant financial benefits through its business in Texas and in this District, this Court has a strong interest in adjudicating this case.

In sum, all relevant § 1404(a) factors weigh against transfer or are neutral at best—*none* favor transfer. Amazon's motion to should be denied.

## II. AMAZON HAS NOT MET ITS SIGNIFICANT BURDEN TO SHOW THAT THE WESTERN DISTRICT OF WASHINGTON IS "CLEARLY MORE CONVENIENT"

To prevail on a motion to transfer under §1404(a), there is a "*significant burden* on the movant to show good cause for the transfer." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) (emphasis added); *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 638 (E.D. Tex. 2011) ("[T]he Court, in accordance with the Fifth Circuit, recognizes the significance of the burden and does not take it lightly"). Parties seeking transfer "must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen*, 545 F.3d at 315.

To satisfy this significant burden, Amazon must show that the Western District of Washington is a "*clearly more convenient*" forum. *Id.* (emphasis added). The determination of whether Amazon has met this significant burden involves consideration of private and public interest factors, discussed below. *Id.* The factors are not exhaustive or exclusive, and no one factor "can be said to be of dispositive weight." *Id.*

As set forth below, each of the relevant factors either weighs against transfer or is neutral at best. None favor transfer. Amazon's motion should thus be denied.

### A. All Private Interest Factors Weigh Against Transfer or Are Neutral

#### 1. The sources of proof are just as accessible in this District as the Western District of Washington

In its motion, Amazon asserts that it "maintains" documents and information related to Amazon Video in Seattle. Mot. at 6. But in the declaration of Andrew Watts, he states that technical documents relating to Amazon Video are "stored" in "Seattle or London," and that source code relating to Amazon Video is "managed by engineers in Seattle or London." Watts Decl. (Dkt. No. 26-1) ¶ 5. Therefore, it appears that at least some of Amazon's relevant documents and source code are located in London and will have to be transported regardless of whether this case is transferred. Amazon, however, fails to specify the volume of such documents despite its burden to demonstrate that Washington is clearly more convenient.

2

Further, the Watts declaration states that "[d]ocuments relating to the design and functionality of Amazon Video and Amazon Kindle and Fire devices capable of running it are primarily located at Amazon's headquarters in Seattle *or at Amazon's [San Francisco] Bay Area facilities.*" *Id.* ¶ 4 (emphasis added).[1] Again, Amazon fails to specify the volume of documents in its "Bay Area facilities," thus making it impossible to determine the full weight of this factor. Amazon also asserts that it does not have documents in this District, but fails to state whether there are relevant documents in other Texas districts. This information is highly relevant, especially given that Amazon has data centers in the Dallas/Fort Worth area. Even worse, Amazon refused Realtime's request to conduct venue-related discovery, preventing Realtime from doing any investigation into these highly relevant issues.

In any event, Amazon has not identified any physical documents or evidence, and presumably all of its documents are stored—and will be produced—electronically, which minimizes if not completely eliminates any purported inconvenience under this factor. *See J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:8-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("identifying the location of electronic sources of proof will typically not tip this factor in favor of transfer"). While Realtime recognizes that this factor is nonetheless relevant to the transfer analysis, the Court should not ignore the reality that producing electronic documents does not present a significant inconvenience to warrant transfer, especially where, as here, Amazon does not assert that it would be inconvenient to produce documents in this District. *See, e.g.*, *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014) ("[W]here electronic discovery is the norm (both for electronic information and digitized paper documents), ease of access is neutral given the portability of the information."); *iPowerUp, Inc. v. Ascent Solar Techs., Inc.*, No. LA CV16-01006 JAK (AFMx), 2016 WL 6953453, at *7 (C.D. Cal. May 27, 2016) ("[I]n light of the use of electronic discovery and document transmission, this factor offers very limited support

---

[1] Amazon's attempt to focus only on Amazon Video is meritless. The Fire tablet and Fire TV are separately accused products, and witnesses and evidence relating to how the video functionalities are implemented in these devices are highly relevant to the transfer analysis.

3

for the transfer of this action."); *Mirror Worlds Techs., LLC v. Facebook, Inc.*, No. 17-CV-3473 (JGK), 2017 WL 5634127, at *5 (S.D.N.Y. Nov. 20, 2017) ("It would not be a significant inconvenience to either party to transmit the relevant evidence electronically to this or any District."); *Tomita Techs. USA, LLC v. Nintendo Co.*, 818 F. Supp. 2d 770, 772 (S.D.N.Y. 2011) ("technological advances have rendered certain [] factors [such as the location of documents] less relevant"; noting that defendant can easily produce its documents "with the click of a mouse").

Furthermore, any minimal inconvenience to Amazon under this factor is negated because all of Realtime's relevant documents are stored in this District in its Tyler office. Tashjian Decl. ¶ 7. Realtime's documents in Tyler include patent file histories and other documents relating to the patents-in-suit. *Id.* In light of Amazon's vague, insufficient disclosures and Realtime's documents in this District, this factor is neutral at best. *See NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, No. 6:10-CV-229 JDL, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (according weight to the location of the plaintiff's documents in Texas despite plaintiff having been incorporated in Texas only four months before filing suit).

### 2. The Western District of Washington is not more convenient for most of the potential witnesses

Amazon has failed to show that transfer to Washington would be "clearly more convenient" for the party witnesses in this case. Amazon specifically identifies six employees in Seattle, all of whom appear to have duplicative if not identical knowledge. For example, four of its identified witnesses (Andrew Watts, BA Winston, Nick Benson, and Bruce Li) all are alleged to have knowledge regarding the same topic: "the design, development, and operation of Amazon Video." Watts Decl. ¶ 4. The other two party witnesses (Derek Anderson and Dave Matsumoto) both have knowledge about "[f]inancial information relating to Amazon Video, Kindle Fire and Fire TV devices." *Id.* ¶ 6. Absent any explanation as to why multiple witnesses are necessary to testify about the exact same topics, Amazon should not be permitted to rely on these multiple witnesses to bolster its witness count for purposes of transfer. Nor should Amazon be permitted to rely on unidentified "[o]ther teams and employees" (Mot. at 8) who purportedly have relevant knowledge

4

about the accused products. *NovelPoint Learning*, 2010 WL 5068146, at *6 ("the Court will not base its conclusions on unidentified witnesses").[2]

In addition, this District is more convenient for all of Realtime's witnesses. James Fallon, co-inventor of the '535, '477, and '442 patents, is in Armonk, New York. Tashjian Decl. ¶ 9. Stephen McErlain, manager of Realtime and co-inventor of the '535, '477, and '442 patents, resides in Astoria, New York. *Id.* Gerald Padian and Richard Tashjian are also managers of Realtime and reside in Katonah, New York. and Manhasset, New York, respectively. *Id.* ¶¶ 2, 9. Each of these New York-based witnesses would have to travel an additional 1,000+ miles if this case is transferred to Washington.

Amazon's assertion that Washington would be more convenient for Realtime's witnesses merely because of the availability of direct flights is unsupported. The Fifth Circuit applies the "100-mile rule," which evaluates convenience based on the *distance* to be traveled. *See Realtime Data LLC v. Teradata Operations, Inc.*, No. 6:15-cv-470-RWS-JDL, 2016 WL 235183, at *4 (E.D. Tex. Jan. 20, 2016) ("*Teradata*") ("[W]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, *the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled*.").

Amazon's assertion that Realtime's witnesses cannot be inconvenienced in light of Realtime's "decision" to file lawsuits in California, Colorado, and Delaware is also meritless. The mere fact that Realtime filed *other cases* in other districts does not mean that the Western District of Washington is more convenient that this District. Indeed, all of the cases Amazon mentions were filed after the Supreme Court's *TC Heartland* decision, which restricts patent venue to 28 U.S.C. § 1400(b)—"the judicial district where the defendant resides, or where the defendant has

---

[2] Notably, under this factor, Amazon states only that it "has no relevant employees *in this district*" (Mot. at 8), but does not state that it has no relevant employees in Texas. On the other hand, under the compulsory process factor, Amazon makes a point to say that it "knows of no relevant non-party witnesses that live in Texas, let alone in this judicial district." Mot. at 10.

5

committed acts of infringement and has a regular and established place of business."[3] And while it is true that Realtime's witnesses will have to travel cross-country to California for one of its cases, this does not negate the fact that for *this case*, it would be far more convenient for them to travel to this District instead of Washington. This is especially true given that Realtime has an office in this District, but has no ties to Washington.

With respect to the third-party witnesses, the prior art inventors identified by Amazon should be given no weight. As an initial matter, these witnesses do not live in the Western District of Washington, and Amazon has not made any showing that they are willing witnesses who would not require compulsory process. Therefore, they should not be considered under this factor. Nor should they be considered under the compulsory process factor as they are outside the Western District of Washington's trial subpoena power.

Moreover, as this Court has noted on multiple occasions, "inventors of prior art rarely, if ever, actually testify at trial." *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) ("*Rackspace*"); *see also PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar. 21, 2013); *Adaptix, Inc. v. Cellco Partnership d/b/a Verizon Wireless*, No. 6:15-cv-45-RWS-JDL, Dkt. No. 32 at 8 (E.D. Tex. Aug. 12, 2015).[4] Accordingly, this Court has rejected arguments just like Amazon's argument here because, "without even indicating on a good faith basis that a party intends to call a prior art witness to trial, it allows litigants to cherry-pick third parties who happen to have an invention in the relevant art and are located in the litigant's preferred district in order to sway the convenience analysis." *Id*.

---

[3] In light of Amazon's facilities and employees in this District, Amazon does not and cannot dispute that it has a regular and established place of business in this District, and that venue is thus proper under § 1400(b) and *TC Heartland*. *See* Dkt. No. 21 ¶ 5 & n.1.

[4] This Court has further explained that "[i]n most cases, the only witnesses who actually testify about prior art are the named inventors of the patents-in-suit and expert witnesses," and "[o]ccasionally, a party's corporate representative will also testify about prior art." *PersonalWeb Techs.*, 2013 WL 9600333, at *8 n.13.

6

The other third parties (Gary Sullivan, and former Amazon employees Bill Carr and Brad Baron) also should not be given any weight under this factor, as Amazon relies on these same witnesses under the compulsory process factor (discussed below). Amazon should not be permitted to double-count witnesses under both factors. Either they are willing witnesses, or they will require compulsory process—not both. In any event, as discussed below, Amazon has failed to meet its burden to show that these third parties are necessary for trial.

In light of the foregoing, this factor is neutral.

### 3. The Western District of Washington does not possess more relevant subpoena power

Amazon's reliance on Dr. Gary Sullivan, one member of a team of persons who helped to develop the H.264 and H.265 standards, presents another example of Amazon cherry-picking witnesses to sway the transfer analysis. Indeed, Amazon does not assert that it is likely to call Dr. Sullivan at trial, instead only vaguely stating that he "may be a highly relevant witness in this case." Mot. at 9. This is insufficient. "[I]t is incumbent upon the advancing party to demonstrate the likelihood of a third-party witness actually testifying at trial in order for the Court to meaningfully assess the weight that should be attached to the witness." *Teradata*, 2016 WL 235183, at *3. Amazon fails to meet this burden. The mere fact that Realtime's complaint cites to Amazon's use of certain industry standards does not automatically make Dr. Sullivan a material witness necessary for trial. *See id.* (giving third party witness no weight where movant did not "specifically demonstrate[] the materiality of [the witness's] testimony by explaining how his knowledge will be central to any of the issues in this case").

With respect to the two former Amazon employees, Bill Carr and Brad Baron, Amazon likewise fails to make any showing that these witnesses are likely to testify at trial. Amazon fails to even establish that these former employees have unique knowledge not held by its current employees. Instead, Amazon merely speculates that they "have knowledge that current Amazon employees *may not* possess." Mot. at 8 (emphasis added). Again, this vague, speculative assertion is insufficient to meet its significant burden on a motion to transfer venue.

7

Regardless, even assuming that the third-party witnesses are necessary for trial, Amazon does not assert that "using the non-party witnesses' deposition as opposed to live testimony at trial would seriously inconvenience" it. *Nexus Display Techs. LLC v. Dell, Inc.*, No. 2:14-CV-762, 2015 WL 5043069, at *4 (E.D. Tex. Aug. 25, 2015) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000)). Therefore, this factor is neutral.

### 4. The "practical problems" and judicial economy weigh against transfer

"Practical problems include those that are rationally based on judicial economy." *PersonalWeb Techs.*, 2013 WL 9600333, at *5. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Id.* "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009); *see also In re Google Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective.").

Here, there is one other case pending before this Court involving the same and related patents: *Realtime Adaptive Streaming, LLC v. Cisco Systems, Inc.*, No. 6:17-cv-00591-JRG. This related case involves substantial overlap in issues of fact and law, including the validity of the overlapping patent claims and claim construction, to name a few. *See* Fed. R. Civ. P. 42(a).

On the other hand, Realtime has no cases in the Western District of Washington. Far from promoting the interest of justice, "[t]ransferring the case will only consume unnecessarily additional judicial resources" and create a risk of inconsistent rulings. *Mondis Tech. Ltd. v. Top Victory Elecs. (Taiwan) Co.*, No. 2:08-cv-478-TJW, 2009 WL 3460276, at *5 (E.D. Tex. Oct. 23, 2009); *see also Adrain v. Genetec Inc.*, No. 2:08-cv-423, 2009 WL 3063414, at *3 (E.D. Tex. Sept. 22, 2009) ("[T]he division of the case into multiple suits may be more convenient for [the defendant], but it would impose a significant burden on the plaintiff, witnesses, and the federal

court system. In addition to the burden on the courts, the existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication.").

Amazon's assertion that "multiple courts will have to resolve overlapping patent issues even if this case remains in this district" (Mot. at 11–12) misses the point. The mere fact that, in the wake of *TC Heartland*, Realtime filed some cases outside of this District does not negate the substantial judicial economy gains that would result from having this Court, where another Realtime case concerning the same patents is pending, decide this case. In contrast, there are no judicial economy gains to be had by transferring this case to Washington, where *no other* related cases are pending. Indeed, it would be extremely inefficient to add another district court to the mix, especially where, as here, Amazon has failed show that Washington is a clearly more convenient forum.

Amazon's assertion that "the procedural posture of this case heavily favors transfer" (Mot. at 12) is also wrong. The *Internet Machines* case cited by Amazon holds only that "transfer is disfavored when the issue is raised late in the case." *Internet Machs. LLC v. Alienware Corp.*, No. 6:10-cv-023, 2011 U.S. Dist. LEXIS 66207, at *26 (E.D. Tex. June 7, 2011). It does *not* hold that transfer is favored, let alone "heavily favored," simply because a motion is filed early in the case. In fact, the court's holding in *Internet Machines* indicates that under such circumstances, this is at best a neutral consideration. *Id.* at *27–28.

Because having this Court decide the claims concerning the asserted patents "clearly furthers" the "orderly, effective, administration of justice," this factor strongly weighs against transfer. *Google*, 412 Fed. Appx. at 296.

### B. The Public Interest Factors Weigh Against Transfer

#### 1. Administrative difficulties resulting from court congestion is neutral

Amazon argues that this factor favors transfer because the Western District of Washington has a slightly shorter median time to trial than this District (19 months vs. 22 months). Mot. at 12. But this Court has "repeatedly found [that] reliance on general civil statistics provides the Court with little guidance as to the speed with which patent cases reach trial." *Rackspace*, 2017 WL

9

772653, at *11. Therefore, "[d]ue to its speculative nature, this factor neutral." *Id.*; *see also Elbit Sys. Land & C4i Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-00037-RWS, 2017 WL 4693513, at *12 (E.D. Tex. July 19, 2017) (finding this factor to be neutral where movant cited statistics showing that the median time for a patent case to reach trial in this District is 30 months as compared with 42.7 months in Maryland).

Moreover, even if the Court were to give any weight to this factor, Amazon's argument fails to account for the fact that this case has already been pending in this District for three months. Thus, even taking Amazon's statistics at face value, transferring this case to Washington would not result in an earlier trial date.

### 2. The Western District of Washington does not have a greater interest

Amazon's assertion that the Western District of Washington has a greater interest because it is headquartered and employs 30,000 employees there (Mot. at 13) should be rejected. This Court has previously rejected this same argument because it essentially amounts to an argument that the Court should transfer the case "because [the Washington] jurors will be biased toward the defendant." *Ingeniador, LLC v. Adobe Sys. Inc.*, No. 2:12-CV-00805-JRG, 2014 WL 105106, at *4 (E.D. Tex. Jan. 10, 2014). This Court has further noted that such an argument "raises troubling fairness implications" and should be "afford[ed] little weight." *Phoenix Licensing, L.L.C. v. Royal Caribbean Cruises Ltd.*, No. 2:13-CV-1095-JRG-RSP, 2014 WL 7272640, at *5 (E.D. Tex. Dec. 22, 2014).

And even if the Court were to accept this argument, it is undisputed that Amazon has facilities and employees in and near this District in Coppell, Carrollton, and Forth Worth, Amazon maintains data centers in Dallas/Fort Worth area, and derives financial benefits through its business in Texas and in this District. For example, Amazon's property was appraised on the property tax rolls by Denton County at nearly $250 million. Amazon has also entered into various contracts with the State of Texas. *See* Dkt. No. 21 ¶ 5; Exs. 1–11. Indeed, Amazon does not dispute that it has a regular and established place of business in this District under § 1400(b). Therefore, this District has just as much of an interest than the Western District of Washington.

Amazon also asserts that Washington has a greater interest because Amazon Video was designed and developed there. Mot. at 13. But as Amazon admits, the accused Fire tablet and Fire TV devices were *not* designed in Washington. They were designed in California. Mot. at 4 n.4. In addition, the accused conduct is not limited to merely design and development of the accused products. It also includes sales, and there is no dispute that Amazon sells products, including the accused products, throughout Texas and within this District.[5]

In contrast with Amazon's significant connections to Texas and this District, Realtime has no connections to Washington. Realtime is a Texas company with an office in Tyler. And Realtime's sole member, Realtime Data, LLC ("Realtime Data") has ties to this District dating back to 2009, when it opened an office in Tyler to assist with commercializing its patents related to data compression technology. Tashjian Decl. ¶¶ 3–5. Realtime Data opened another office in this District, in Plano, in 2015.

Amazon's attempts to discount Realtime's ties to this District are unavailing. Realtime's representative has provided a declaration stating that its Tyler office was *not* opened for solely for litigation purposes, but rather to further its efforts to commercialize its intellectual property. Tashjian Decl. ¶ 6. Amazon has no evidence otherwise—only unfounded speculation. And contrary to Amazon's assertions, the mere fact that Realtime was incorporated a few months before it filed suit is not proof of venue manipulation. *See Effectively Illuminated Pathways LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-CV-34-LED-JDL, 2012 WL 13009008, at *5 (E.D. Tex. Apr. 19, 2012) ("Defendants have not met their burden of showing that [plaintiff] was incorporated in Texas merely to manipulate venue. . . . [T]he fact that [plaintiff] was incorporated in Texas six

---

[5] Other courts have held that as a general matter, this factor is neutral because "[p]atent cases implicate constitutionally protected property rights" and "[t]he resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature." *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 701 (D. Del. 2013). "Moreover, to characterize patent litigation as 'local' undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases." *Id.*

months before initiating the instant action is insufficient in and of itself to show venue manipulation."); *NovelPoint Learning*, 2010 WL 5068146, at *7 (holding that the "Eastern District of Texas has a local interest in the outcome of the case" where plaintiff was incorporated in Texas four months before filing suit); *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-CV-216-JRG, 2012 WL 462956, at *9 (E.D. Tex. Feb. 13, 2012) (same).

In light of both Amazon's and Realtime's connections to this District, this factor weighs against transfer.

### 3. The other public interest factors are neutral

Amazon admits that the remaining factors are neutral and do not favor transfer. Realtime agrees.

## III. CONCLUSION

For the foregoing reasons, Amazon's motion should be denied.

Dated: January 3, 2018                                Respectfully submitted,


By: /s/ *Reza Mirzaie*
Reza Mirzaie (CA SBN 246953)
Marc A. Fenster (CA SBN 181067)
Brian D. Ledahl (CA SBN 186579)
C. Jay Chung (CA SBN 252794)
Philip X. Wang (CA SBN 262239)
Adam S. Hoffman (CA SBN) 218740)
Paul A. Kroeger (CA SBN 229074)
Christian W. Conkle (CA SBN 306374)
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
(310) 826-7474 (telephone)
(310) 826-6991 (facsimile)
rmirzaie@raklaw.com
mfenster@raklaw.com
bledahl@raklaw.com
jchung@raklaw.com
pwang@raklaw.com

        ahoffman@raklaw.com
        pkroeger@raklaw.com
        cconkle@raklaw.com

        T. John Ward, Jr. (TX SBN 00794818)
        Claire Abernathy Henry (TX SBN 24053063)
        WARD, SMITH & HILL, PLLC
        1127 Judson Road, Suite 220
        Longview, TX 75601
        (903) 757-6400 (telephone)
        (903) 757-2323 (facsimile)
        jw@wsfirm.com
        claire@wsfirm.com

        **Attorneys for Plaintiff**
        **Realtime Adaptive Streaming, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via email on January 2, 2018.

/s/ *Reza Mirzaie*