**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| REALTIME ADAPTIVE STREAMING LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 6:17-CV-00549-JRG |
| AMAZON.COM, INC., AMAZON DIGITAL SERVICES, LLC, AMAZON DIGITAL SERVICES, INC., | § § § § | |
| *Defendants.* | § § | |

## ORDER DENYING DEFENDANTS' MOTION TO CHANGE VENUE

Before the Court is Defendants' Motion to Change Venue Seeking Transfer to the Western District of Washington pursuant to 28 U.S.C. § 1404 (Dkt. No. 26) ("the Motion"). For the reasons stated below, the Motion is **DENIED**.

## I.   LEGAL STANDARD

If venue in the district in which the case is originally filed is proper, the court may nonetheless transfer a case based on "the convenience of parties and witnesses" to another district where the case could have been brought. 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'"

(quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))). For purposes of § 1400(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.

Once the initial threshold of proving the proposed transferee district is one where the suit might have been brought is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the moving defendant must

demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.*; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'"); *id.* at 908 (transfer under § 1404 is mandated where venue is "far more convenient and fair."). Absent such a showing, however, the plaintiff's choice is to be respected. *Volkswagen II*, 545 F.3d at 314–15.

## II. DISCUSSION

### A. The Action May Have Been Brought in the Transferee District

As noted above, the threshold inquiry in a § 1404(a) analysis requires a court to find that the action could have been filed in the proposed transferee district. *Volkswagen I*, 371 F.3d at 203. A party cannot unilaterally waive proper venue under § 1404 such that transfer would be permitted—upon a finding of convenience—to a district desired by the movant but not one in which the action might have been brought. *See Hoffman*, 363 U.S. at 344.

The Parties do not appear to dispute that venue would be proper in the Western District of Washington. Amazon notes that "the accused Amazon products and services were designed and developed there, and Amazon has its headquarters in that district," (Dkt. No. 26 at 5,) while Realtime does not address this element at all. (*See* Dkt. No. 27.)

Accordingly, the Court finds that this action could have been brought in the proposed transferee district of the Western District of Washington and proceeds to the second portion of the analysis, the private and public convenience factors.

### B. Convenience Factors

#### 1. Relative Ease of Access to Sources of Proof

Amazon argues that this factor favors transfer because Amazon "maintains documents and information related to Amazon Video in Seattle." (Dkt. No. 26 at 6 (citing Watts Decl., Dkt. No

26-1 at ¶¶ 4–6).) Specifically, Amazon asserts that the bulk of the Amazon Video technical documentation and computer source code and its financial information relating to Amazon Video, the Fire tablet, and Fire TV devices are located in Seattle, while it stores no documents or source code in the Eastern District of Texas. (*Id.* at 6–7.)

Realtime responds this factor is "neutral at best." (Dkt. No. 27 at 4.) Realtime notes that Mr. Watts' declaration actually states that the technical documents and source code are stored in "Seattle or London." (*Id.* at 2 (quoting Watts Decl., Dkt. No. 26-1 at ¶ 5).) Similarly, Mr. Watts' declaration states that "[d]ocuments relating to the design and functionality of Amazon Video and Amazon Kindle and Fire devices capable of running it are primarily located at Amazon's headquarters in Seattle *or at Amazon's [San Francisco] Bay Area facilities*." (*Id.* at 3 (quoting Watts Decl., Dkt. No. 26-1 at ¶ 4).) In both places, Realtime asserts that Amazon "fail[ed] to specify the volume of such documents despite its burden to demonstrate that Washington is clearly more convenient." (*Id.* at 2.) Realtime additionally responds that "all of Realtime's relevant documents are stored in this District in its Tyler office," including "patent file histories and other documents relating to the patents-in-suit." (*Id.* at 4 (citing Tashjian Decl., Dkt. No. 27-1 at ¶ 7).)

Amazon replies that Realtime's documents "should [be] give[n] no weight . . . because [they] relate[] only to [Realtime's] litigation campaign." (Dkt. No. 29 at 1.) Amazon further contends that the volume of documents in Seattle and California is irrelevant because "Federal Circuit law is clear that the bulk of the relevant evidence will come from the accused infringer, making the location of those documents most relevant to the transfer analysis." (*Id.* at 5.)

Realtime sur-replies that, "[c]ontrary to Amazon's assertions, [information regarding the volume of documents in Seattle, California, and London] is highly relevant because if, for

example, much of Amazon's documents and source code are in London and/or California, then this factor would not favor transfer." (Dkt. No. 30 at 1.)

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Amazon must show that transfer to the Western District of Washington will result in more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

The Parties do not appear to dispute that Realtime has documents relating to its intellectual property development and licensing, physical devices and prototypes, and patent file histories and other documents are located physically or electronically at its Tyler office. While Amazon would have this Court neutralize Realtime's contribution to this factor, it fails to provide any evidence that Realtime's physical documents were moved to this District for the specific purpose of manipulating venue; indeed, Realtime's declaration states that its Tyler office was founded in 2009 "in order to assist with the licensing and trials relating to Realtime Data's intellectual property portfolio and its data-compression inventions. Realtime Data did not open its Tyler office for the purpose of filing lawsuits in Tyler or anywhere else in this District." (Dkt. No. 27-1 at ¶ 3.) While Realtime may have founded the office to assist with litigation, such actions are a distant cry from Amazon's allegations of transferring documents for the sole purpose of venue manipulation.

As to its documents, Amazon asserts that "[d]ocuments relating to the design and functionality of Amazon Video and Amazon Kindle and Fire devices capable of running it are primarily located at Amazon's headquarters in Seattle or at Amazon's Bay Area facilities." (Dkt. No. 26-1 at ¶ 4.) Further, "[t]echnical documents relating to Amazon video are stored in Seattle or London" and "[s]ource code relating to Amazon Video is managed by engineers in Seattle or

London." (*Id.* at ¶ 5.) Finally, "[f]inancial information relating to Amazon Video, Kindle Fire and Fire TV devices is located in Seattle." (*Id.* at ¶ 6.)

Amazon's failure to adequately describe where its documents are located means that this Court cannot reasonably address the relative ease of access to sources of proof. While Amazon asserts that some of its documents are located in Seattle and San Francisco, both of which would weigh in favor of the Western District of Washington, Amazon also asserts that it has technical documents in London, England, a foreign location closer to Marshall, Texas, than to Seattle, Washington. Amazon then fails to notify the Court at all as to where the source code is located, instead relying on the locations of the engineers working on the source code. The Court notes that such personnel are properly analyzed under the "Cost of Attendance" factor, rather than "Sources of Proof." *Agis Software Dev. LLC v. Huawei Device USA Inc.*, Case No. 2:17-CV-00513-JRG, 2018 U.S. Dist. LEXIS 86382, *12 (E.D. Tex. May 23, 2018). Amazon is the master of its own documents. When it states that some are in a venue supportive of transfer, but others are in a venue supportive of denying transfer, it (because no one else can) creates a responsibility to quantify and clarify such statements so that the court can weigh and resolve those competing statements. Here, Amazon has made the competing statements, but failed to then clarify or quantify what they have said. Plaintiff cannot do this for them, and neither can the Court. The result is that the Court is left in a position where it cannot determine whether the documentary evidence favors one venue over the other. Consequently, the Court, out of an abundance of caution, finds this factor to be neutral.

### 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

Amazon asserts that the 100-mile limit under Federal Rule of Civil Procedure 45(c)(1)(A) weighs in favor of a transfer to the Western District of Washington. Amazon asserts that "[n]on-party witnesses Dr. Gary Sullivan, Bill Carr, and Brad Baron reside in the Western District of

6

Washington and could be compelled to testify at trial there, but would be outside of the subpoena power of this Court," while there are no relevant non-party witnesses that live in Texas. (Dkt. No. 26 at 10.)

Realtime responds that this factor is neutral, as Amazon has failed to show that these witnesses are likely to testify at trial. (Dkt. No. 27 at 7.) Realtime notes that Amazon only asserted that Dr. Sullivan, "one member of a team of persons who helped to develop the H.264 and H.265 standards," "'may be a highly relevant witness in this case.'" Realtime then asserts that such a declaration is insufficient "for the Court to meaningfully assess the weight that should be attached to the witness." (*Id.* (quoting Dkt. No. 26 at 9).) Similarly, Realtime asserts that Amazon failed to establish that Bill Carr and Brad Baron have any unique knowledge, instead speculating that they "'have knowledge that current Amazon employees *may not* possess.'" (*Id.* (quoting Dkt. No. 26 at 8).)

Amazon replies that Dr. Sullivan is likely to testify at trial because he "had a lead role in developing the H.264 and H.265 standards at issue in this case" and "Realtime contends that Amazon infringes Realtime's patents by implementing these very standards." (Dkt. No. 29 at 4.) As to Mssrs. Carr and Baron, Amazon asserts that they "worked on and have knowledge regarding, the early versions of the Amazon Video service and application and are subject to subpoena in the Western District of Washington," thus, "[i]f these witnesses testify at trial, they will either have to appear voluntarily, in which case the Court should properly consider their convenience, or the Court will have to compel their appearance—a power this Court does not have." (*Id.*)

This situation underscores why it is incumbent upon the advancing party to demonstrate both the likelihood and the willingness of a third-party witness to actually testify at trial in order for the Court to meaningfully assess the weight that should be attached to the witness. Here,

Amazon has not done so. It has provided no indication of any issue regarding infringement, validity, or damages that would be aided by Dr. Sullivan's testimony; nor has Amazon provided any basis for the Court to determine that two former employees who worked on the early stages of the accused products would be likely to testify at trial. Nor has Amazon argued that any of its three third-party witnesses are unwilling to appear here. On the other hand, Realtime has not identified any third-party witnesses within this Court's subpoena power.

All too often, the Court is confronted at this early stage of litigation with zealous assertions as to the likelihood and importance of certain individual witnesses, only to find months later at trial that such persons are nowhere to be found. The temptation to overstate the unique importance of persons whose physical location strengthens a venue challenge is not lost on the Court. This reality of human nature couched within the adversary context of competitive litigation places upon the asserting party a need to provide clear and precise reasons why the identified individuals are indeed clothed with such important and relevant knowledge as to make their presence at trial truly probable. Otherwise, there will be no check on the temptation to overstate and overpromise at the venue stage about realities that are but a faint memory by the time of trial. Amazon has made such assertions about Dr. Sullivan and Mssrs. Carr and Baron, but has not given the Court clear reasons why what they now contemplate is actually true. Out of an abundance of caution, and in the absence of countervailing evidence, the Court considers Dr. Sullivan and Mssrs. Carr and Baron to be unwilling third-party witnesses. However, the Court finds that this factor weighs very slightly in favor of transfer, especially given the speculative nature of these witnesses' likelihood of actually appearing at trial.

### 3.   Cost of Attendance for Willing Witnesses

Amazon argues that, given the distance of this Court from its headquarters in Seattle, "litigating here would impose an undue burden on the Amazon employees and other witnesses

8

with knowledge relevant to this case." (Dkt. No. 26 at 7.) Amazon notes that "Realtime has no relevant witnesses in this district," as its "officers live in New York, not Texas." (*Id.*) Similarly, many of the inventors live either in New York or in Europe. (*Id.*) Amazon argues that travel to Seattle for Realtime's witnesses in New York and Europe would be more convenient than travel to Tyler, as the "availability of direct flights generally makes flying from New York to Seattle less expensive *and* faster than flying to Tyler." (*Id.* at 8.) Amazon further argues that the convenience of its non-party witnesses, including Dr. Sullivan, clearly weighs in favor of the Western District of Washington because such witnesses reside either in the Western District or on the West Coast. (*Id.* at 9.)

Realtime responds that Amazon "has failed to show that transfer to Washington would be 'clearly more convenient.'" (Dkt. No. 27 at 4.) Realtime alleges that Amazon "specifically identifies six employees in Seattle, all of whom appear to have duplicative if not identical knowledge," as well as unidentified "other teams and employees." (*Id.* at 4, 4–5.) At the same time, Realtime argues that "this District is more convenient for all of Realtime's witnesses," each of whom resides in New York. (*Id.*) Realtime further notes that Amazon's argument about the availability of flights is unsupported by Fifth Circuit law, which evaluates convenience based on the distance travelled, not the number of stops along the way. Finally, Realtime argues that the third-party prior art inventors identified by Amazon should be given no weight, as Amazon has made no showing that such witnesses are willing and those witnesses identified under the compulsory process factor should not be double counted. (*Id.* at 6–7.)

Amazon replies that each of its Seattle witnesses has "distinct areas of expertise." (Dkt. No. 29 at 3.). Realtime sur-replies that such "new allegations and evidence, including eight new exhibits, regarding the knowledge held by its witnesses . . . is improper." (Dkt. No. 30 at 3.)

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as other courts applying Fifth Circuit venue law have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

Amazon identified six employees as potential witnesses: Andrew Watts, BA Winston, Nick Benson, and Bruce Li, which Amazon identifies as relevant to its use of the H.264 and H.265 video compression standards, and Derek Andersen and Dave Matsumoto, who have knowledge regarding the financial information of the accused devices. (Dkt. No. 26-1 at ¶¶ 4, 6.) Amazon did not identify any other specific witnesses other than Dr. Sullivan and former employees Bill Carr and Brad Baron, each of whom was analyzed under the "compulsory process" factor.

Realtime identified three potential witnesses: James Fallon, co-inventor of certain of the Asserted Patents, Stephen McErlain, manager of Realtime and co-inventor of certain of the Asserted Patents, and Gerald Padian, manager of Realtime, each of whom reside in New York state near New York City. (Dkt. No. 27-1 at ¶ 9.) It is undisputed that Tyler, Texas is approximately 1000 miles closer to New York than is Seattle. Further, the Court notes airfare is only one factor in the cost of attendance: lodging and meals are likely to be significantly less expensive in Tyler than in Seattle.

Accordingly, factoring in the greater number of witnesses in the Seattle area against the extra distance required for the Realtime witnesses and overall additional expense of trial in Seattle, the Court finds that this factor is neutral.

### 4. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

Amazon argues that transfer would pose "no practical problems for any party," as "Realtime's New York-based witnesses must travel regardless of whether this case moves forward in Texas or Washington." (Dkt. No. 26 at 11.) Amazon further argues that there are no issues of judicial economy or efficiency that warrant keeping the case in this district because the Federal Circuit previously held that "the proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation." *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011); (Dkt. No. 26 at 11). Finally, Amazon argues that the procedural posture of this case heavily favors transfer, as Amazon filed its Answer concurrently with the Motion, the Court had not set a schedule yet, and the Parties had not yet served any discovery. (Dkt. No. 26 at 12.)

Realtime argues that the practical problems and judicial economy weigh against transfer because the consolidated case against Cisco involves each of the Asserted Patents. Accordingly,

"[t]his related case involves substantial overlap in issues of fact and law, including the validity of the overlapping patent claims and claim construction." (Dkt. No. 27 at 8.)

It is well established that "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs, LLC v. NEC Corp. of Am., Inc.*, Nos. 6:11-cv-655 to -660, -683, 6:12-cv-662, 2013 U.S. Dist. LEXIS 46296, at *20–21 (E.D. Tex. Mar. 21, 2013) (citing *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)). Further, while "courts should avoid considering copending cases which currently have, or have had, motions to transfer venue to avoid any 'double count' in according proper weight," *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22–23 (E.D. Tex. Sep. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017)), the copending case here has not had any motion to transfer filed. Accordingly, it is proper for the Court to consider the judicial economy in hearing both cases together, as it did in consolidating the two cases. Therefore, the Court finds that this factor weighs against transfer.

### 5.   Administrative Difficulties Flowing From Court Congestion

Amazon argues that this factor weighs in favor of transfer, as the median time-to-trial for the year ending June 30, 2017 was 19 months for the Western District of Washington and 22 months for this district. (Dkt. No. 26 at 12.)

Realtime responds that "this Court has 'repeatedly found that reliance on general civil statistics provides the Court with little guidance as to the speed with which patent cases reach trial.'" (Dkt. No. 27 at 9 (quoting *Realtime Data, Inc. v. Rackspace US, Inc.*, No. 6:16-CV-961, 2017 U.S. Dist. LEXIS 27422, at *36 (E.D. Tex. Feb. 27, 2017)).) Realtime further argues that, as this case has already been pending for three months, transfer to Washington would not result in an earlier trial date. (*Id.* at 10.)

12

The U.S. District Court statistics for the 12-month period ending December 31, 2017 indicates that the median time for cases to from filing to trial in the Western District of Washington is 21.1 months, compared to 19.9 months for the Eastern District of Texas. Table C-5—U.S. District Courts–Civil Statistical Tables for the Federal Judiciary (December 31, 2017), http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2017/12/31.   The Court notes that the Eastern District enjoys a slightly quicker time to trial than the Western District of Washington, and that the time expended here could not be easily recaptured as the transfer of this case will likely cause it to fall in line with newly filed cases in the Western District of Washington. Accordingly, the Court finds that this factor disfavors transfer, but only slightly.

### 6.   Local Interest in Having Localized Interests Decided at Home

Amazon argues that this factor favors transfer because "the Western District of Washington has a unique and strong interest in adjudicating this dispute. Amazon maintains its corporate headquarters in Seattle, and employs over 30,000 people there, including those who design and develop the Amazon Video service." (Dkt. No. 26 at 13.) "The Eastern District of Texas, by contrast, does not have a compelling interest in this case" because "Amazon does not develop or design the accused technology in this district," "does not maintain relevant documents or other information here," and "no Amazon employees with relevant knowledge reside or work in the district." (*Id.*) Amazon further argues that Realtime established its operations in Texas "just last year" and that its "physical presence in the district—solely for the purpose of litigating its patents—does not give this district a particular interest in adjudicating Realtime's claims.") (*Id.*)

Realtime argues that this factor weighs against transfer. As to Amazon, Realtime notes that this "Court has previously rejected [Amazon's argument that its size warrants a transfer] because it essentially amounts to an argument that the Court should transfer the case 'because [the Washington] jurors will be biased toward the defendant.'" (Dkt. No. 27 at 10 (quoting *Ingeniador,*

*LLC v. Adobe Sys. Inc.*, No. 2:12-cv-805, 2014 WL 105106, at *4 (E.D. Tex. Jan. 10, 2014)).)

Realtime further argues that "it is undisputed that Amazon has facilities and employees in and near

this District in Coppell, Carrollton, and Forth Worth [sic], Amazon maintains data centers in

Dallas/Fort Worth area, and derives financial benefits through its business in Texas and in this

District.

Amazon replies that this case "'call[s] into question the work and reputation of individuals

residing in or near the transferee district.'" (Dkt. No. 29 at 5 (quoting *Realtime Data LLC v.*

*Barracuda Networks Inc.*, No. 6:17-cv-120, 2017 U.S. Dist. LEXIS 176261, at *13 (E.D. Tex. Oct.

24, 2017)).) Further, Amazon argues that Realtime has no meaningful operations in its lone office

in this District, "has made no actual showing of bias in Washington," and that Amazon's

fulfillment centers cannot provide an interest because they relate to nation-wide sales operations

and not the technology at issue here. (*Id.*)

Realtime sur-replies that the "mere fact that Amazon has a 'significant presence' in the

Western District of Washington does not give that District a greater interest in this case." (Dkt.

No. 30 at 5.) Realtime further argues that this Court's prior decisions do not rely on an actual

showing of bias to reject Amazon-type arguments and that "Amazon has physical facilities and

employees in this District, and derives substantial financial benefits through its business in this

District and Texas." (*Id.* (citing Dkt. No. 21 at ¶ 5; Exs. 1–11).)

There is no dispute that the Western District of Washington has a local interest in this

dispute, because Amazon is headquartered in Seattle. Similarly, there can be no dispute that

Realtime, a resident corporation of this district, has similar local interests in this community.

While Amazon asserts that the Western District of Washington should be given preference

by virtue of Amazon's sheer size, the Court has previously addressed this argument and found it

14

wanting. *See AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-cv-516, 2018 U.S. Dist. LEXIS 94947, at *26 (E.D. Tex. June 6, 2018). In *AGIS*, the defendant

> urge[d] this Court inquire as to the relative "strength" of the local interests.  The Court questions the appropriateness of that inquiry.  If followed to its conclusion, smaller businesses and individual plaintiffs will *always* be disfavored by this factor, as the interest their communities may have is small when compared to the interest a distant community may have in its hometown corporate pillar.  This does not accord with foundational principles of justice.

*AGIS*, 2018 U.S. Dist. LEXIS 94947, at *26; s*ee also* Fifth Circuit Pattern Jury Instructions (Civil Cases) § 2.16 ("A corporation and all other persons are equal before the law and must be treated as equals in a court of justice."); *Deadwood Canyon Ranch, LLP v. Fid. Expl. & Prod. Co.*, No. 4:10-CV-081, 2014 WL 11531554, at *16 (D.N.D. July 16, 2014) ("All persons are equal before the law and companies or corporations, big or small, are entitled to the same fair consideration."). Accordingly, the Court finds Amazon's argument that venue should be afforded to the larger company to be without merit.

Amazon does not dispute that it has facilities in this District. While Amazon asserts that such facilities did not provide a local interest on the basis that they are related to national sales and do not use the asserted technology; nevertheless, Amazon affords itself of the laws and protections provided by this District.

Accordingly, accounting for the locations of both Parties, as well as the work and reputation of the Parties' employees, the Court finds that the Eastern District of Texas has at least as great a localized and proportional interest as the Western District of Washington and that this factor is neutral.

**7. Familiarity of the Forum With the Law That Will Govern the Case and 8. Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law**

The Parties agree that these factors are neutral. Accordingly, the Court finds that these factors are both neutral.

### III. CONCLUSION

Having analyzed the factors, the Court finds that Amazon has failed to meet its significant burden to show that the Western District of Washington is clearly more convenient than the Eastern District of Texas.[1] Accordingly, Amazon's Motion to Transfer Venue (Dkt. No. 26) is **DENIED**.

**So ORDERED and SIGNED this 5th day of September, 2018.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[1] The Court finds that Factors 1, 3, and 6–8 are neutral, with Factor 2 weighing slightly in favor of transfer, Factor 4 weighing against transfer, and Factor 5 weighing slightly against transfer.

16